FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 19 2011

JAMES R. LARSEN, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
Jane Kirk
Assistant United States Attorney
402 East Yakima Avenue
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,  )
                           )
            Plaintiff,     )
                           )   11-CR-02081-LRS-4
     vs.                   )
                           )   Plea Agreement
GONZALA OLEA BLANCO,       )
                           )   **Fed.R.Crim.P. 11(c)(1)(C)**
            Defendant.     )

Plaintiff, United States of America, by and through MICHAEL C. ORMSBY, United States Attorney for the Eastern District of Washington, and Jane Kirk, Assistant United States Attorney for the Eastern District of Washington, and Defendant GONZALA OLEA BLANCO, and the Defendant's counsel, Timothy Cotterell, enter into the following Plea Agreement:

1.  <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, GONZALA OLEA BLANCO, agrees to plead guilty to an Information Superseding the Superseding Indictment filed on September 13, 2011, charging the Defendant with Misprision of a Felony, in violation of 18 U.S.C. § 4.

The Defendant, GONZALA OLEA BLANCO, understands that the charge contained in the Information is a Class E felony. The Defendant, GONZALA OLEA BLANCO, also understands that the maximum statutory penalty for Misprision of a Felony, in violation of 18 U.S.C. § 4, is a sentence of 3 years imprisonment; a fine not to

PLEA AGREEMENT                    1

exceed $250,000; a term of up to 1 year supervised release; and a $100 special penalty assessment.

The Defendant, GONZALA OLEA BLANCO, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office.

The Defendant understands that this is a Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) and that either party may withdraw from this Plea Agreement if the Court rejects the Plea Agreement.

3. <u>Waiver of Constitutional Rights</u>:

The Defendant, GONZALA OLEA BLANCO, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    (a). The right to a jury trial;
    (b). The right to see, hear and question the witnesses;
    (c). The right to remain silent at trial;
    (d). The right to testify at trial; and
    (e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4. **Effect on Immigration Status**:

Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

5. **Elements of the Offense**:

The United States and the Defendant agree that in order to convict the Defendant of conspiracy to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt the following elements:

(a.) First, a federal felony was committed, as charged in the Information;

(b.) The defendant had knowledge of the commission of that felony;

(c.) The defendant failed to notify an authority as soon as possible. An "authority" includes a federal judge or some other federal civil or military authority, such as a federal grand jury, DEA agent; and

(d.) The defendant did an affirmative act, as charged, to conceal the crime.

6. <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for GONZALA OLEA BLANCO's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Since January 2011, DEA TFO Dustin Dunn has been working with a confidential source who was able to purchase methamphetamine from an individual later identified as Gerardo Vargas-Mendoza. On February 1, 2011, the CS conducted a controlled purchase of 3 ounces of crystal methamphetamine from Vargas-Mendoza. On March 2, 2011 the CS conducted a second controlled purchase, buying 1 ounce of methamphetamine. On March 17, 2011, the CS purchased approximately 2 ounces of methamphetamine from Vargas-Mendoza. In May 2011, Vargas-Mendoza agreed to provide 4 pounds of methamphetamine to the CS,

reporting that he had a contact in California, Tomas, who would supply the drug.

In late May, 2011, Vargas-Mendoza contacted Jaime Zepeda-Cardenas about driving to California to pick up the methamphetamine. Zepeda-Cardenas was to be paid $3000 for making the trip. Zepeda-Cardenas agreed and prepared his car, a 2002 gray Ford Taurus, Washington License number 799 ZMI, for the trip. In late May 2011, Vargas-Mendoza and Zepeda-Cardenas traveled to Anaheim, California to pick up the methamphetamine. On May 29, 2011, while in Anaheim, California, Vargas-Mendoza received the methamphetamine from Tomas. Thereafter, Vargas-Mendoza and Zepeda-Cardenas returned to Yakima, Washington, followed by codefendant Juan Gonzalez-Cabrera, who was transported in a Toyota truck, California license number 8X29605 and registered to Tomas Trujillo at 500 South Alvy Street, Anaheim, California. Gonzalez-Cabrera was protecting the methamphetamine and was to transport the proceeds of the sale of the methamphetamine back to Tomas in California at the conclusion of the drug transaction. Approximately 2-3 days later, Zepeda-Cardenas delivered Vargas-Mendoza and the methamphetamine to 116 West A Street, Wapato, Washington.

On June 8, 2011, Vargas-Mendoza instructed Zepeda-Cardenas to go to 814 Adams Avenue, Wapato, Washington. Once there, Zepeda-Cardenas was instructed to transport co-conspirators Gonzalez-Cabrera and Primitivo Garcia-Gutierrez to 116 West A Street. After doing so, Zepeda-Cardenas returned to 814 Adams Avenue and picked up Vargas-Mendoza, then returned to 116 West A Street. Once there, Zepeda-Cardenas took the suitcase containing

PLEA AGREEMENT                                    5

methamphetamine from the trunk of the vehicle and put the suit case inside the house at 116 West A Street. Thereafter, inside the northeast bedroom of the house, Vargas-Mendoza displayed the methamphetamine to the CS.

In May 2011, co-defendant Olea Blanco was present while Vargas-Mendoza and Zepeda-Cardenas at Zepeda-Cardenas' residence discussed traveling to California to pick up the methamphetamine. Then on June 8, 2011, Olea Blanco was at 116 West A Street at the time of the drug trafficking crime. Vargas-Mendoza often resided at 116 West A Street and on June 8, 2011, Vargas-Mendoza temporarily used the residence at 116 West A Street for the purpose of distributing methamphetamine. Olea Blanco was aware that Vargas-Mendoza was using the residence at 116 West A Street on June 8, 2011 and directed Vargas-Mendoza to conduct the drug transaction in "Chino's" room. Vargas-Mendoza was going to pay Olea Blanco for the use of the residence during the drug trafficking.

A search warrant at 116 West A Street resulted in the seizure of 1695 grams of actual methamphetamine, as determined by the DEA laboratory. Vargas-Mendoza admitted that he and Zepeda-Cardenas traveled to California to obtain the methamphetamine for distribution to the CS and that Gonzalez-Cabrera was to transport the drug proceeds back to California.

At the time of her arrest, Olea Blanco said that she did not know anything about the drug deal occurring at her residence on June 8, 2011.

7. <u>Waiver of Inadmissibility of Statements</u>:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

8. <u>The United States Agrees</u>:

(a.) <u>Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Superseding Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

(b.) <u>Dismissal of Charge</u>:

In return for the Defendant's agreement to plead guilty, the government agrees to dismiss Indictment and Superseding Indictment, Count 1, Conspiracy to Distribute Methamphetamine, Count 5, Possession with Intent to Distribute Methamphetamine; and Count 6, Maintaining a Place for Drug Trafficking.

9. <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are

applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a.) <u>Base Offense Level</u>:

The United States and the Defendant agree that the base offense level for misprision of the felony of maintaining a Place for Drug Trafficking is 17. See U.S.S.G. §§2D1.4 & 2X4.1(a).

(b.) <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than December 19, 2011, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever, if the Defendant tests positive for any controlled substance or if the Defendant fails to continue to accept full responsibility for her actions.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall

PLEA AGREEMENT                               8

provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

Therefore, the United States and the Defendant agree that the Defendant's final adjusted offense level would be 14.

(c.) **Criminal History**:

The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

10. **Departures and Variances**:

There are no aggravating or mitigating factors with respect to the correct calculation of the Sentencing Guidelines. The United States and the Defendant agree that they will not seek either an upward or a downward departure or variance from the applicable Guidelines.

11. **Incarceration**:

The United States agrees to recommend a sentence of 15 months and the Defendant will recommend that the Court impose a sentence of time served.

12. **Criminal Fine**:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

13. **Supervised Release**:

The United States and the Defendant agree to recommend that the Court impose a 1 year term of supervised release.

PLEA AGREEMENT 9

**14. Mandatory Special Penalty Assessment:**

The Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

**15. Payments While Incarcerated:**

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

**16. Additional Violations of Law Can Void Plea Agreement:**

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

**17. Appeal Rights:**

Defendant understands that she has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives her right to appeal her conviction and the sentence the Court imposes. Defendant further expressly waives her right to file any post-conviction motion attacking her conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective

assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

18. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

MICHAEL C. ORMSBY
United States Attorney

_/s/ Jane Kirk_            December 9, 2010
Jane Kirk                                Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the

PLEA AGREEMENT               11

representation of my attorney in this case.  No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I am guilty.

_____   12-9-11
GONZALA OLEA BLANCO                  Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client.  The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties.  I concur in my client's decision to plead guilty as set forth in the Plea Agreement.  There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____   12-9-11
TIMOTHY COTTERELL                    Date
Attorney for the Defendant

I hereby certify that I have read and translated the entire foregoing document to the Defendant in a language with which she is conversant.  If questions have arisen, I have notified the Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

_____   12/09/11
Interpreter                          Date
Levi Enriquez

PLEA AGREEMENT                       12